## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Tyler Trexler, <br><br> Plaintiff, <br><br> v. <br><br> City of Belvidere and Brandon Parker, <br><br> Defendants. | Case No. 3:20-cv-50113 <br><br> Honorable Iain D. Johnston |

### MEMORANDUM OPINION AND ORDER

Plaintiff Tyler Trexler ("Trexler") brings this action against Officer Brandon Parker and the City of Belvidere pursuant to 42 U.S.C. § 1983 and Illinois state law. Dkt. 1, ¶ 1. Although Defendant Parker has answered the complaint, dkt. 19, Defendant City of Belvidere ("the City") has moved to dismiss the claim against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), dkt. 20, at 1. For the reasons below, the motion to dismiss [20] is denied.

### I. Analysis

On a motion to dismiss, the Court must accept all "well-pleaded facts as true and draw all reasonable inferences" in Trexler's favor. *Calderone v. City of Chicago*, 979 F.3d 1156 (7th Cir. 2020). Conclusory allegations, mere speculation, and "formulaic" recitations of the elements of a claim are not good enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the claim must be plausible on its face, such that—after taking the allegations as true—the Court can "draw the

reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### A. Factual Allegations

As the Court must do on a motion to dismiss, the facts are taken from the
complaint. Just after midnight on August 9, 2018, Trexler and his girlfriend were
walking on Logan Avenue in Belvidere, Illinois. Dkt. 1, ¶ 8. Defendant Parker, an
on-duty police officer with the Belvidere Police Department, stopped Trexler to
investigate whether Trexler was underage and out after curfew. *Id.* ¶¶ 10–13.
Officer Parker approached Trexler in an aggressive manner and kicked him. *Id.* at
12, 16. Trexler fell to the ground and Parker instructed his K-9 partner, Monti, to
attack Trexler—Monti complied, biting Trexler repeatedly. *Id.* ¶¶ 17–21. As a
result, Trexler suffered numerous injuries and required medical attention. *Id.* ¶ 29.

Trexler "screamed for help and yelled that he was not resisting." *Id.* ¶ 21. He
alleges that he did not threaten Officer Parker, did not attempt to attack Parker,
and did not attempt to flee. *Id.* ¶ 19. Still, Parker arrested Trexler for felony
aggravated battery to a police officer, resisting a peace officer, obstructing a police
officer, and possession of a controlled substance. *Id.* ¶ 25. Trexler pleaded guilty to
aggravated obstruction. *Id.* ¶ 27.

Officer Parker is not a stranger to these situations. Trexler alleges that the
percentage of Officer Parker's "routine" arrests that result in charges of resisting
arrest is one of the highest.[1] *Id.* ¶ 39. Furthermore, Officer Parker has allegedly

---

[1] Although the complaint does not clarify, the Court takes the reasonable inference that it means
"highest" in the City's police department.

been "named in about fifty percent of all lawsuits against members of the Belvidere Police Department alleging excessive force." *Id.* Critical to the *Monell* claim, Trexler alleges that Officer Parker's actions were taken "pursuant to, and as a result of, one or more of the [below] de facto practices, policies and customs of the City of Belvidere, the Belvidere Police Department, and its police officers.

Trexler alleges that the City has the following practices, policies, and customs:

> a. arbitrary use of excessive force against suspects, arrestees, detainees and other civilians,
>
> b. preparing false and incomplete police reports, and/or not preparing police reports, to cover up police misconduct including unconstitutional searches and seizures,
>
> c. filing false charges and pursuing baseless prosecutions in order to protect police officers from claims of improper conduct and avoid liability,
>
> d. a code of silence in which police officers fail to report police misconduct,
>
> e. applying this code of silence in that police officers either remain silent or give false and misleading information during trials and official investigations to cover up misconduct,
>
> f. failing to adequately train, supervise and discipline police officers in the categories and fields of police work addressed above,
>
> g. failing to adequately investigate citizen complaints against police officers,
>
> h. failing to adequately discipline police officers for misconduct.

*Id.* ¶ 38. Trexler further alleges that the City—the Mayor, the City Council, or the Police Department—is responsible for such policies, practices, and customs,

3

and that "[b]y their inaction and failure to correct the above-described" allegations, the City has "tacitly approve[d] and thus indirectly authorize[d] the type of misconduct" alleged in this action. *Id.* ¶¶ 40, 43.

### B. *Monell* Claim

Trexler brings a policy-based claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To establish *Monell* liability for constitutional violations, a plaintiff must show the existence of an official policy or custom "that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (quoting *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). A plaintiff can allege this causal requirement in one of three ways: (1) by alleging that an actual official policy exists, (2) by alleging a widespread practice or custom, or (3) by alleging a deliberate act from an employee with final policy-making authority. *Id.* at 834.

Here, the City argues that Trexler's allegations "largely amount to a recital of the elements of a *Monell* claim supported by conclusory statements that are wholly devoid of any factual support." The City is partially correct in that some of the allegations in Trexler's complaint are conclusory and some allegations do merely restate the elements of a *Monell* claim. But Trexler still alleges facts that—if taken as true—provide the Court with a reasonable inference that the City would be liable under *Monell*.

4

The most applicable of the three *Monell* variations seems to be the second; a widespread practice or custom. Trexler alleges that Officer Parker "has one of the highest percentage[s] of 'routine' arrests that result in charges of resisting arrest being added to the original charge." Dkt. 1, ¶ 39. That is alarming, if true, on its own. Trexler continues. He further alleges that Officer Parker "has also been named in about fifty percent of all lawsuits against members of the Belvidere Police Department alleging excessive force." *Id.* Again, if true, that allegation is powerful. It creates the reasonable inference that the City was aware of Officer Parker's practice of excessive force and either condoned it or ignored it by continuing to allow Officer Parker to continue to serve and protect the public as an officer of the law.

Trexler includes several other allegations specific to the City. They include allegations of false and incomplete police reports, police misconduct cover-ups, the filing of false charges, a code of silence to protect fellow officers, misleading testimony and potential perjury on the part of police officers, and failures to adequately investigate and discipline police misconduct—among other concerning allegations. *Id.* ¶ 38. To be sure, these allegations fail to include specific instances of these concerning issues being perpetrated. But when combined with the allegations specific to Mr. Trexler and the allegations of widespread alleged misconduct on the part of Officer Parker against many members of the community, these allegations easily defeat the City's motion to dismiss.

The allegations about Officer Parker's history of routine arrests escalating to resisting arrest charges combined with his alarmingly high history of excessive

force litigation creates a reasonable inference that the City was aware and allowed the problem to continue. Such tacit acceptance of Officer Parker's actions means that the City's inaction is the moving force behind the alleged constitutional violation.[2]

The Court notes that Belvidere, Illinois, is not a megalopolis. It is a municipality of about 25,000 souls—at least that is what the sign says. The reasonable inference is that the City possesses a relatively small police department. So, the reasonable inference, which this Court must draw in favor of Trexler, is that those in his chain of command, as well as the final policy makers, know about Officer Parker's history. Whether discovery ultimately supports this reasonable inference awaits another day.

In reply, the City cites to *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) for the proposition that bare allegations of customs or policy are not sufficient. Initially, the Court pauses to reflect on the City's citation to *Strauss* in its reply brief. As shown below, the Court does not need to determine whether *Strauss* is good law. But a legion of cases questions the validity of *Strauss*. *See, e.g.*, *McDonald v. Obaisi*, No. 16-CV-5417, 2017 U.S. Dist. LEXIS 148487, at *9-10 (N.D. Ill. Sept. 13, 2017). Surprisingly, at least to this Court, there are some district courts in the Seventh Circuit that still rely upon *Strauss. See, e.g., Jaroscak v. Times of Northwest Ind.*, No. 2:17-cv-91, 2017 U.S. Dist. LEXIS 174653, at *13-14

---

[2] To be clear, the City cannot be liable under *Monell* for the actions of Officer Parker directly—under a theory of respondeat superior. Rather, it is liable for its own actions. *Monell v. Dep't of Soc. Sers.*, 436 U.S. 658, 691 (1978) Here, that action is the alleged creation of a de facto policy of ignoring a pattern of constitutional violations and, therefore, tacitly approving them.

(N.D. Ind. Oct. 23, 2017). Like the Dead Person in *Monty Python and the Holy Grail*, *Strauss* may not be dead yet, but it's just a matter of time before the cart master hits it on the head. http://montypython.50webs.com/scripts/Holy_Grail/Scene2.htm. If *Strauss* is the best case a defendant can offer up, it should probably re-think its motion.

But, regardless of whether *Strauss* is still good law, the City's argument misses the mark. Trexler's allegations are more than bare allegations. In *Strauss*, the Seventh Circuit explained that the plaintiff had only alleged facts "related to his arrest." *Id.* The court continued, "Nothing in the complaint suggests that the incident was other than an isolated one unrelated to municipal policy." *Id.* That statement is precisely why Trexler's allegations exceed the minimum requirements. He has alleged more than an isolated incident. Although he has not alleged specific other people involved in those incidents, Trexler's allegations—and their reasonable inferences—paint a picture of a police officer with such a history of excessive force that the City would have known of his actions and that the City's de facto policy was to either ignore Officer Parker's conduct or tacitly approve it.

### C. Indemnification

The City next moves the Court to dismiss count IV, which is a claim for indemnification under the Illinois Indemnity Act, 740 Ill. Comp. Stat. 10/9-102. Dkt. 20, at 7. The City contends that such claim is barred by a one-year statute of limitations that began to run on August 9, 2018—the day of the alleged encounter with Officer Parker. *Id.* Trexler responds that indemnification is not an

independent claim but is attached to the underlying § 1983 claim, and the limitations period, therefore, has not begun. Dkt. 26, at 8. Here, Trexler is correct. As other courts in this district have noted, "The statute of limitations for an indemnity claim, however, does not begin to accrue until judgment has been entered against the employee." *Holliman v. Cook Cty.*, No. 15 C 9050, 2016 U.S. Dist. LEXIS 120279, at \*10 (N.D. Ill. Sept. 6, 2016) (citing *Esparza v. Dart*, No. 14-CV-1390, 2014 U.S. Dist. LEXIS 155944, at \*6–7 (N.D. Ill. Nov. 4, 2014)). Therefore, because no judgment has been entered in this action, the statute of limitations on any indemnification claim has not started and the claim is not time barred.

## II. Conclusion

Because Trexler's allegations are sufficient and because the statute of limitations on the indemnification issue has not begun, the City's motion to dismiss [20] is denied. The City must answer the complaint by February 12, 2021.

Date: January 25, 2021

Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division