**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Tyler Trexler, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 20 CV 50113 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| City of Belvidere, et. al., ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant City of Belvidere has moved to bifurcate and stay discovery on Plaintiff's *Monell* claim. Dkt. 42. For the following reasons, the motion to stay discovery on Plaintiff's *Monell* claim is denied. The motion to bifurcate the *Monell* claim for trial is denied without prejudice as premature. Any motion to bifurcate the *Monell* claim at trial may be presented to the District Judge after fact discovery is complete.

**I. BACKGROUND**

Plaintiff Tyler Trexler's suit against Defendants City of Belvidere ("the City") and Brandon Parker alleges that, on August 9, 2018, he was stopped, kicked by Defendant Parker, and bitten by Defendant Parker's K9. Plaintiff alleges unreasonable seizure and excessive force claims against Defendant Parker. He also alleges a *Monell* claim and an indemnification claim against the City. Plaintiff's *Monell* claim alleges that the City has the following unconstitutional practices, policies, and customs: arbitrary use of excessive force; preparing false and incomplete police reports and/or not preparing police reports to cover up police misconduct; filing false charges and pursuing baseless prosecutions; maintaining a code of silence in which police officers fail to report police misconduct; applying the code of silence so that police officers either remain silent or give false and misleading information to cover up misconduct; failing to adequately train, supervise, and discipline police officers; failing to adequately investigate citizen complaints against police officers; and failing to adequately discipline police officers for misconduct.

Before the Court is the City's motion to bifurcate Plaintiff's *Monell* claim pursuant to Federal Rule of Civil Procedure 42(b) and stay any further *Monell* discovery pursuant to Federal Rule of Civil Procedure 26(d).

**II. DISCUSSION**

Federal Rule of Civil Procedure 42(b) provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The Seventh

1

Circuit has emphasized that only one of the above criteria, prejudice or judicial economy, needs to be satisfied for a court to grant bifurcation "as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Fed. Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007). The district court has considerable discretion in deciding whether to bifurcate claims. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). In recent years, motions to bifurcate *Monell* claims have become "commonplace" and there is a growing body of precedent for both granting and denying bifurcation of *Monell* claims in § 1983 cases. *See Williams v. City of Chi.*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018); *see also Giles v. Ludwig*, No. 12-CV-6746, 2013 WL 6512683, at *1 (N.D. Ill. Dec. 6, 2013). However, "[b]ecause bifurcation risks additional delay, it has remained the exception and not the rule." *Tate v. City* of *Chi.,* No., 18 CV 07439, 2019 WL 2173802, at *3 (N.D. Ill. May 20, 2019) (quotation and citation omitted). "[T]he decision to grant or deny bifurcation is a heavily fact-intensive analysis, dependent upon costs and benefits of bifurcation under the unique circumstances of each case." *Awalt v. Marketti,* No. 11 C 6142, 2012 WL 1161500, at *10 (N.D. Ill. April 9, 2012). Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *see also, e.g., Horton v. City of Chi.*, No. 13-CV-6865, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016); *Saunders v. City of Chi.*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015).

**A. Judicial economy**

*i. Individual liability requirement*

The City argues that bifurcation will avoid unnecessary and onerous discovery. The City contends that, as a general rule, Plaintiff must succeed on his claims against Defendant Parker before the City can be liable. As such, the City argues the *Monell* claim may not need to be adjudicated at all. The City acknowledges the possibility for a municipality to be held liable without a liable individual but argues that it is an "unlikely scenario" given the nature of Plaintiff's claims. Defendant cites *Sallenger v. City of Springfield* as authority for the proposition that a *Monell* claim based on an alleged failure to train cannot exist independently of an underlying constitutional claim. 630 F.3d 499 (7th Cir. 2010).

Plaintiff responds to this argument by emphasizing that his *Monell* claim is not derivative of his individual claims. He points out that Seventh Circuit case law indicates that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). In *Thomas*, the Seventh Circuit rejected the argument that individual officer liability was always required before a municipality could ever be held liable under *Monell. Id*. To determine whether a municipality's liability is dependent on its officers, the Seventh Circuit looked to "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id*.

In *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080 (N.D. Ill. Sept. 2, 2015), a court in this district addressed an argument similar to the one made by the City here in a factual setting that was also similar. In *McIntosh*, the complaint alleged a Fourth Amendment unconstitutional seizure claim that also implicated an excessive force claim. *Id*. The complaint alleged that the defendant officers' actions were done "pursuant to one or more interrelated de facto policies, practices and/or customs" of the defendant municipality. *Id*. The

2

court determined that the underlying claims were partially premised on the actions of the individual defendants, but also based on the presence of policies, practices, and customs including "the failure to properly train and supervise Chicago police officers with regards to discharging their weapons at civilians, particularly at young Black men." *Id*. The court noted that the plaintiff's allegations referred to constitutional violations that factually overlapped with, but could still be distinct from, the *Monell* allegations. *Id*. at 8. The court found that, due to the early stage of litigation[1] and because the defendant officers had asserted qualified immunity,[2] it was "premature to unequivocally state that there [could] be no municipal liability in the absence of underlying individual liability." *McIntosh*, 2015 WL 5164080, at *8. In other words, it was possible that there would be two separate trials that resulted in different but compatible verdicts, in which case bifurcation would add complexity to the discovery process. *Id.*[3]

In this case, the constitutional violations alleged are an unconstitutional seizure claim and an excessive force claim. The complaint states that Defendant Parker's actions "were done pursuant to, and as a result of, one or more of the above de facto policies, practices and customs" of Defendant City of Belvidere. Pl.'s Compl. at 5, Dkt. 1. The underlying claims are premised on Defendant Parker's actions in part but are also based on the presence of the practices, policies, and customs, which include "failing to adequately train, supervise and discipline police officers" in areas such as use of excessive force. *Id*. at 4-5. The allegations in the complaint overlap with, but may still be distinct from, the *Monell* allegations, given the early stage of litigation[4] and that Defendant Parker has asserted a qualified immunity defense. *See* Def.'s Answer at 7-8, Dkt. 19. Additionally, the City's citation of *Sallenger* is not applicable because, in that case, qualified immunity had already been denied and a jury had found the defendant officers not liable. 630 F.3d at 502-03. Based on this analysis, the Court finds it premature to conclude that Plaintiff must succeed on his claims against Defendant Parker before the City can be held liable. Therefore, bifurcation is not warranted on this basis.

*ii. Burdensome discovery*

---

[1] To the court, the motion was brought at an "early stage of litigation" because it was "prior to depositions of any individual defendants and the production of policy and training documents." *Id*. In another case, the court found it premature to decide whether there could be municipal liability in the absence of underlying individual liability partially because the motion was brought prior to the completion of substantive discovery. *Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *3 (N.D. Ill. Apr. 20, 2017).

[2] The Seventh Circuit in *Thomas* had found the absence of any qualified immunity issues significant because "[w]ithout any affirmative defenses, a verdict in favor of the officer necessarily meant that the jury did not believe the officer violated the plaintiff's constitutional rights. And since the City's liability was based on the officer's actions, it too was entitled to a verdict in its favor." *Thomas*, 604 F.3d at 304-05 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986). However, when qualified immunity defenses are raised, it is possible that a jury could credit those defenses without foreclosing a plaintiff's *Monell* claims. *See Scott v. Buncich*, No. 2:16-CV-114, 2018 WL 1556412, at *5 (N.D. Ind. Mar. 30, 2018).

[3] Courts in this district commonly deny bifurcation of *Monell* claims, at least in part, because the defendant officers asserted the defense of qualified immunity. *See Loury*, 2017 WL 1425594, at *3; *Marshbanks v. City of Calumet City*, No. 13 C 2978, 2015 WL 1234930, at *4 (N.D. Ill. Mar. 16, 2015); *Martinez v. Cook Cty.*, No. 11 C 1794, 2011 WL 4686438, at *1–2 (N.D. Ill. Oct. 4, 2011); *Clarett v. Suroviak,* No. 09 C 6918, 2011 WL 37838, at *1–3 (N.D. Ill. Jan 3, 2011); *Medina v. City of Chicago,* 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000).

[4] In the instant case, depositions have not occurred and discovery is ongoing.

The City argues that proceeding with discovery on the *Monell* claim would be extremely burdensome. They state that discovery would likely include investigations into "a large number" of incidents and list the "[areas] of potential discovery." Def.'s Mot. at 5-6, Dkt. 43. The City "anticipates Plaintiff will continue to seek extensive written discovery" and expects that "costly expert discovery will invariably follow," which will generate "numerous lengthy reports" and cause "additional costs." *Id*. at 6. The City points out that Plaintiff has already requested depositions of three individuals and his first requests to produce, for which the City produced over 2,100 pages, resulted in Plaintiff requesting "even more documents." *Id*. at 5. The City contends that if Plaintiff is unable to determine the scope of the remaining discovery after 2,100 pages, it is "reasonable to infer" *Monell* discovery will be "onerous, excessively time consuming, and resource intensive." Def.'s Reply at 4, Dkt. 52. Additionally, the City asserts that Plaintiff's claims against Defendant Parker are much different from his claims against the City, so bifurcation would allow the claims against Defendant Parker to proceed without the "unnecessary and burdensome discovery" of the *Monell* claim. Def. Mot. at 7-8, Dkt. 43.

Plaintiff counters that the City's motion is premature because they are largely unaware of what discovery he will request. Plaintiff also argues that, even if the motion was not premature, the City has failed to meet their burden of establishing that bifurcation is warranted. He contends that the City has used hyperbolic and non-specific language to characterize the potential burden of *Monell* discovery but has not explained how Plaintiff's discovery requests would lead to such a burden.

Responding to Defendant's assertion that the vast difference in the types of claims justifies bifurcation, Plaintiff cites *Swanigan v. City of Chicago*, where the Seventh Circuit stated that "courts cannot prevent plaintiffs from pursuing potentially viable *Monell* claims that . . . are distinct from the claims against individual defendants." 775 F.3d 953, 963 (7th Cir. 2015). He contends that his *Monell* claims are distinct, "especially when it comes to report writing, discipline of officers, and the training and use of the K9 Unit." Pl.'s Resp. at 8, Dkt. 48. Therefore, Plaintiff argues, because an adverse resolution of the individual claims would not necessarily dispose of the *Monell* claim, bifurcating and staying the *Monell* claim would reduce efficiency by delaying the adjudication of his claims.

As an initial matter, this Court notes that the language the City uses to argue that proceeding with *Monell* discovery would be burdensome is vague and speculative. For example, Defendant refers to the likelihood of a "large" amount of discovery, speculates about possible areas of discovery, and attempts to predict Plaintiff's discovery plan. This sort of language is unpersuasive to the Court. *See Rodriguez v. City of Chicago*, No. 17 CV 7248, 2018 WL 3474538, at *3 (N.D. Ill. July 19, 2018) (denying bifurcation of *Monell* discovery noting that the assertions of the high costs of *Monell* discovery is speculative and "broader scope" does not necessarily translate to an "undue burden"); *Scott*, 2018 WL 1556412, at *7 (stating that hyperbolic and non-specific allegations are not enough to persuade the court that bifurcation was warranted); *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *3 (N.D. Ill. Nov. 29, 2007) (finding that a non-specific assertion of burden is insufficient when used in support of bifurcating a *Monell* claim).

Moreover, a party's assertion that discovery would be overly burdensome is typically accompanied by a showing, such as an affidavit or other reliable evidence, supporting the assertion.

4

*See Red Barn Motors, Inc. v. Cox Enterprises, Inc.*, No. 114CV01589TWPDKL, 2016 WL 1731328, at *3 (S.D. Ind. May 2, 2016); *Symons Int'l Grp., Inc v. Cont'l Cas. Co.*, No. 1:01-CV-00799-RLY-MJ, 2015 WL 1279839, at *7 (S.D. Ind. Mar. 20, 2015). This Court has noted before that "[c]ourts in this circuit find that broadly decrying the time and expense that is expected to be associated with responding to discovery, without any substantiation, does not establish good cause for staying discovery." *Harper v. Cent. Wire, Inc.*, No. 19 CV 50287, 2020 WL 5230746, at *4 (N.D. Ill. Sept. 2, 2020) (citing cases). Additionally, once *Monell* discovery is issued, to the extent that the City believes that those requests are overly broad or unduly burdensome, "the parties can seek assistance from the Court to tailor the requests as necessary after making independent good faith attempts to do so." *Maysonet v. Guevara*, No. 18-CV-2342, 2020 WL 3100840, at *3 (N.D. Ill. June 11, 2020) (citing *McIntosh*, 2015 WL 5164080, at *8).

The City has failed to make an adequate showing that proceeding with discovery on the *Monell* claim would impose an undue burden. All that the City has offered in support of its motion are the unsupported statements of counsel in the briefs, a copy of Plaintiff's requests to produce (to which Defendant has already responded), communication from Plaintiff's counsel requesting copies of videos (for which this Court recently granted Plaintiff's motion to compel), and Plaintiff's indication of an intent to take three depositions. This does not constitute the sort of showing required to support the assertion that discovery would be onerous and burdensome.

*iii. Judicial resources*

The City argues that bifurcation would promote judicial economy because it would eliminate the need for judicial intervention into potential discovery disputes, ruling on their future summary judgment motion, and presiding over a more complex trial. They note that many courts grant *Monell* bifurcation motions in large part on this basis.

However, many courts in this district acknowledge that the bifurcation or staying of *Monell* claims does not necessarily preserve judicial economy and may actually require more judicial resources than if the claims had not been bifurcated. *See Loury*, 2017 WL 1425594, at *3 ("Given the factual overlap between the *Monell* claims and the constitutional claims, a stay of *Monell* discovery will likely result in continual discovery disputes between the parties about whether Plaintiff's discovery requests invoke her *Monell* claim or her other claims."); *Martinez*, 2011 WL 4686438, at *2 (concluding that, because a defendant officer had asserted the affirmative defense of qualified immunity, it was possible that bifurcating proceedings would be a "waste of judicial resources"); *Cadiz*, 2007 WL 4293976, at *5 ("[A] stay of *Monell* discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct *Monell* discovery at some later date"). Accordingly, it is premature to conclude definitively that bifurcation or a stay would result in increased judicial economy.

**B. Prejudice against the parties**

The City next argues that bifurcation would eliminate the risk of unfair prejudice against all parties. They claim that a single trial on individual and *Monell* liability would severely prejudice both Defendants. Specifically, they point to the danger that evidence on issues relating to conduct by the City would contaminate the mind of the fact finder in considering liability of Defendant

5

Parker and vice versa. The City also argues bifurcation would alleviate prejudice to Plaintiff's claims against Defendant Parker because *Monell* discovery tends to be more lengthy and costly than discovery against individual defendants.

Plaintiff responds that the City's prejudice arguments are premature and speculative. He points out that, while *Monell* discovery is ongoing, none of the parties nor the Court know what evidence would be offered at trial. Plaintiff further argues that, even if Defendants would be prejudiced by some evidence, they can utilize tactics such as limiting instructions, the Federal Rules of Evidence, and motions in limine to mitigate potential prejudice.

Plaintiff also argues that bifurcation and staying discovery regarding his *Monell* claim would be prejudicial to him. Specifically, he contends that bifurcation and a stay would require him to engage in two trials and two rounds of discovery, causing substantially more expense and imposing a significant delay in the adjudication of his claims. Plaintiff cites *Real v. Bunn-O-Matic Corp.*, which states that, even if it may be beneficial in some way, courts should not order bifurcation if it would result in unnecessary delay, additional expense, or some other form of prejudice. 195 F.R.D. 618, 620 (N.D. Ill. 2000).[5]

As noted above, the City has brought the instant motion at a relatively early stage in the litigation. At this point in time, neither the parties nor the Court know what evidence would be offered at trial or how prejudicial the evidence may be. As such, it would be premature to speculate on the prejudice that one or both Defendants would face should all of Plaintiff's claims move forward in one trial. When faced with this sort of uncertainty at the discovery stage, courts routinely decline to grant motions to bifurcate. *See Rodriguez*, 2018 WL 3474538, at *4; *Loury*, 2017 WL 1425594, at *4; *Cadiz*, 2007 WL 4293976, at *5-6; *Medina*, 100 F. Supp. 2d at 897. If the City still has concerns about prejudice at a later stage as trial approaches, the Court may reconsider granting bifurcation of the trial. The Court and the parties may also be able to mitigate potential prejudice through tools such as limiting instructions, motions in limine, and the Rules of Evidence. *See Houskins v. Sheahan*, 549 F.3d 480, 495-96 (7th Cir. 2008); *Giles*, 2013 WL 6512683, at *2; *Awalt*, 2012 WL 1161500, at *13; *Medina*, 100 F. Supp. 2d at 897.

## C. Prejudice to Plaintiff's recovery

The City's final argument is that bifurcation and a stay of the *Monell* claim would not affect Plaintiff's recovery of any compensatory damages. The City contends that they have a statutory obligation to indemnify Defendant Parker if Plaintiff recovers compensatory damages against him, so Plaintiff would not be able to recover additional compensatory damages based on the *Monell* claim. Further, they argue that, if the *Monell* claim were bifurcated, a second round of discovery would not be per se necessary because Plaintiff can "choose to forego proceeding with additional extensive discovery in order to recover only nominal damages." Def.'s Reply at 7-8.

Plaintiff counters that there are important non-economic objectives, such as deterrence and reform, that would be negatively impacted if the *Monell* claim were bifurcated. He notes that a local news source has conducted investigative reports looking into misconduct by the Belvidere

---

[5] Plaintiff adds that he could agree to narrowing his *Monell* claims to the K9 unit, use of force, report writing, and discipline.

Police Department, but officials have yet to take any action based on the reports. Plaintiff states that his *Monell* claim could contribute to fostering deterrence and reform.

Courts have long recognized and acknowledged the validity and import of non-economic objectives a plaintiff may have for their litigation. *See McIntosh*, 2015 WL 5164080, at *10 ("Plaintiffs in Section 1983 civil actions have other important objectives . . . [including] deterrence and reform that would be furthered by a judgment holding Defendant City liable for Defendant Officers' misconduct . . . A judgment against a municipality can be a catalyst for change, because it . . . can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue.") (internal citations and quotations omitted); *King v. Evans*, No. 13-CV-1937, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015) ("[A] successful *Monell* action could have the benefit of deterring future official misconduct. That is a legitimate goal that a Section 1983 plaintiff may wish to pursue even if it results in an award of only nominal additional monetary damages."); *Awalt*, 2012 WL 1161500, at *13 ("Deterrence is a well-founded part of our system of tort liability and a proper objective of bringing suit."); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). Here, Plaintiff has affirmed that he does have non-economic objectives, including deterrence and reform. Therefore, granting Defendant City's motion to bifurcate would effectively deprive Plaintiff of his right to be the "master of his complaint" and proceed on his *Monell* claim against Defendant City as he intended. *See McIntosh*, 2015 WL 5164080, at *9.

The Court concludes that the City's motion to bifurcate Plaintiff's *Monell* claim and stay discovery are not in accordance with Rule 42(b)'s considerations of convenience, economy, expedition, and prejudice. The potential for bifurcation or a stay to serve the interests of judicial economy and avoid unfair prejudice is speculative at this point in the litigation, especially when weighed against the interests of and prejudice to Plaintiff as the non-moving party.

### III. CONCLUSION

The Court denies Defendant City of Belvidere's motion to bifurcate Plaintiff's *Monell* claim and stay discovery and trial on that claim pending resolution of the claims against Defendant Parker, without prejudice to a renewed motion to bifurcate for trial after discovery is completed.

Date: February 10, 2021        By:        *Lisa A. J.*
                                                           Lisa A. Jensen
                                                           United States Magistrate Judge